IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **Caribbean Parts Agency, Inc.**<br><br>*Plaintiff,*<br><br>v.<br><br>**Hastings Manufacturing Company, LLC.**<br><br>*Defendant.* | Civil No. **08-1281 (SEC)** |

## JOINT CASE MANAGEMENT MEMORANDUM

**TO THE HONORABLE COURT:**

**COME NOW** Caribbean Parts Agency, Inc. ("CPA") and Hastings Manufacturing Company, LLC ("HMC, LLC"), through their respective legal counsels, and, in compliance with this Court's order of April 23, 2008, respectfully submit this Joint Case Management Memorandum:

### I.    FACTUAL AND LEGAL CONTENTIONS

**PLAINTIFF**

On February 2001, Caribbean Parts Agency, Inc. (hereinafter "CPA") and/or Emilio Colón d/b/a Caribbean Parts Plus entered into a non-exclusive contract with Hastings Manufacturing Company, now Hastings Manufacturing Company, LLC (hereinafter "HMC, LLC"), were CPA was named sales representative of HMC, LLC's products in Puerto Rico and the Caribbean. However, during the execution and continuation of the

contract, the terms and conditions of the contract were renegotiated, commissions rates were increased, and exclusivity was ratified, both verbally and in written by HMC, LLC.

Despite said designation, HMC, LLC terminated the contract without just cause. HMC, LLC also damaged the established relationship by directly representing the merchandise and services in the area of Puerto Rico and the Caribbean. HMC, LLC acted deceitfully by falsely representing to CPA its continuity as sales representantive, while it proceeded to directly represent the products and services in the area of Puerto Rico and the Caribbean.

HMC, LLC has sold products to clients of CPA while the contract was still in effect, without informing CPA of it nor transferring the corresponding commissions thereto. HMC, LLC also acted deceitfully by communicating to clients of CPA that CPA would not be the sales representative of HMC, LLC's product, without the consent of CPA.

The acts and omissions of HMC, LLC have caused and continue to cause irreparable damages to CPA, consisting of the loss of business opportunities, the loss of its business reputation, the investments and expenses incurred, the goodwill of the business and the unearned commissions at the rate of 5% percent per product sold.

### *CPA'S LEGAL CONTENTIONS:*

1. CPA is protected under the Puerto Rico Sales Representatives Act, 10 P.R. Laws Ann. §279, et seq. (commonly referred to as "Law No. 21")
2. HMC, LLC terminated CPA's contract "without just cause."
3. CPA is entitled to compensation for the damages caused by Hastings Manufacturing Company now HMC, LLC in accordance to the provisions of Law No. 21.

## HASTINGS MANUFACTURING COMPANY, LLC

### A.     Relevant Facts

On February 20, 2008, CPA commenced a civil action against HMC, LLC before the Superior Court of Puerto Rico, San Juan Part, Civil No. KPE 2008-0621. The complaint alleged certain violations by HMC, LLC to the Puerto Rico Sales Representatives Act, 10 P.R. Laws Ann. §279, *et seq.* (commonly referred to as "Law 21"). The complaint specifically referred to an agreement allegedly entered into by the parties in 2004.

On February 21, 2008, HMC, LLC filed a *Notice of Removal* premised on diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. HMC, LLC thereafter filed its *Answer to Complaint* in the instant case, affirmatively alleging, *inter alia*, that:

- HMC, LLC has not executed any sales agreements with an entity named CPA;

- there is no agreement between HMC, LLC and CPA to sell, exclusively or otherwise, HMC, LLC's products;

- any commercial relationship by and between HMC, LLC and Mr. Emilio Colón d/b/a Caribbean Parts Plus (hereinafter "CPP") was legally terminated;

- in the unlikely event that CPA may be considered a protected sales representative under Law 21, which HMC, LLC denies, the relationship was subject to termination for "just cause"; and

- any claims CPA may have had against Hastings Manufacturing Company (hereinafter "HMC") have been discharged by operation of U.S. Bankruptcy law.

A **non-exclusive** sales representation agreement was executed between HMC and Mr. Emilio Colón, d/b/a CPP on **May 23, 2001** ("the Agreement"). During HMC's bankruptcy proceeding, HMC, LLC purchased substantially all assets of debtor and assumed the Agreement. The Agreement provides for the sales representation of HMC-

products by CPP "on a non-exclusive, account-by-account, basis..." Under said contract, CPP was to create and establish new customers in the Caribbean, as well as maintain existing business. The contract provided for payment by HMC of a two (2) percent commission for all net-paid sales obtained through CPP of up to $400,000 in Puerto Rico. CPP sales in Puerto Rico above $400,000 would be compensated at a commission rate of five (5) percent. HMC would also pay CPP a five (5) percent commission for all sales outside of Puerto Rico.

Over the life of the relationship between CPP and HMC, LLC, sales in Puerto Rico were below projected expectations. There were also certain complaints from Puerto Rico customers as to the manner they were being treated by CPP. Notwithstanding the aforementioned, HMC, LLC offered CPP a new sales representation agreement which was exclusive in nature, yet CPP refused to execute it.

Considering CPP's failure to enter into this new agreement with HMC, LLC, as well as the Puerto Rico-clients' expressed dissatisfaction with CPP's representation of HMC, LLC-products, the latter had no other option but to terminate its relationship with CPP on November 14, 2007.

Moreover, its is important to underscore the fact that HMC, LLC never entered into a sales representation agreement with CPA nor has it authorized Mr. Emilio Colón, d/b/a CPP to assign and/or transfer its Agreement to CPA. Thus, for all effects and purposes, plaintiff CPA lacks standing to file a claim against HMC, LLC for alleged violation of Law 21.

### B. Legal Theory

#### i. *Plaintiff's lack of standing*

In order to request judicial intervention, a litigant must possess legal standing to file a claim. In this respect, the Supreme Court held in *Warth v. Seldin*, 422 U.S. 490, 498-499 (1975), that:

> "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III. This is the threshold question in every federal case, determining the power of the court to entertain the suit. As an aspect of justiciability, the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. Baker v. Carr, 369 U.S. 186, 204 (1962). The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action....' *Id.*, (citing *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 (1973), *Data Processing Service v. Camp*, 397 U.S. 150, 151-154 (1970)).

Under Puerto Rico law, the assignment of contracts is not expressly regulated by the Puerto Rico Civil Code. However, the figure has been recognized by doctrine and Spanish jurisprudence under the doctrine of *pacta sunt servanda*. *See,* Judgment of the Spanish Supreme Court ("J.T.S."), March 5, 2004.

In essence, the assignment of contract provides for the transfer by an assignor to a third party (assignee) of the totality of a contract, assuming the existence of reciprocal obligations that remain unaltered or unaffected. *See,* J.T.S., September 19, 2002. Thereby, the figure of assignment of contract presupposes a transfer between the assignor and

assignee of an existing contract with reciprocal obligations between assignor and assigned party. *Id.*

When a contract is transferred or assigned as a whole, both the passive and active elements of the contractual relationship are assigned. Thereafter, the assignor is separated from the contractual relationship with the assigned party, and the assignee replaces the assignor. M. Andreoli, *La Cesión del Contrato*, Editorial Revista de Derecho Privado, Madrid (1956), pages 14 and 15. Accordingly, and in order to validate the assignment of a contract, the assigned party must consent to the assignment. *See,* J.T.S., September 19, 2002, citing J.T.S., June 12, 1926. The assigned party's consent entails the liberation of the assignee. *Id.* The assigned party's consent can be provided in the same act of the assignment, before or after the same, yet it is always necessary to obtain it for the assignment to be valid. *See,* Jose Luis Albacar Lopez, *Codigo Civil, Doctrina y Jurisprudencia*, Vol IV, Third Ed., Madrid (1992), page 137.

In the instant case, HMC, LLC has neither authorized nor consented --explicitly or otherwise-- to any assignment between CPP and CPA. Thus, CPA lacks standing to claim against HMC, LLC.

    ii. *The Agreement between HMC, LLC and CPP is non-exclusive in nature and thus, outside the purview of Law 21*

Law 21, as amended, is the statute governing matters related to sales representation agreement that are exclusive in nature. The statute defines a sales representative as: "an independent entrepreneur who establishes a sales representation contract of an **exclusive** nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico. It includes the figure known as 'manufacturer's

representative.'" *Re-Ace, Inc. v. Wheeled Coach Indus.*, 363 F.3d 51; (1st Cir.2004) (quoting 10 P.R. Laws Ann. § 279(a), *Orba, Inc. v. MBR Indus., Inc.*, 49 F. Supp. 2d 67, 71 (D.P.R. 1999) (emphasis added). Accordingly, an essential element of a claim under Law 21 is the existence of an "exclusive sales representation contract" entered into after December 5, 1990, when Law 21 was enacted. 10 P.R.Laws Ann. § 279(a).

A sales representation agreement, in turn, is one "established between a sales representative and a principal, through which . . . the party of the first part commits himself to making a reasonable effort and due diligence in the creation or expansion of a market which is favorable for the products that the principal sells, directed at capturing clientele to offer it a product or service marketed by him in Puerto Rico, and the party of the second part is bound to comply with the commitments that may result from the sales representative's efforts and coordination and to pay the previously-accorded commission or remuneration." *Id.* (quoting 10 P.R. Laws Ann. § 279(c)).

Ordinarily, the exclusive nature of the relations is apparent either from the contract or from the arrangements agreed upon between the parties. *Innovation Marketing v. Tuffcare*, 31 F. Supp. 2d 218 (D.P.R. 1998), (citing *Ballester Hermanos, Inc. v. Campbell Soup, Co.*, 797 F. Supp. 103, 105 (D.P.R. 1992); *R.W. Intern. Corp. v. Welch Food, Inc.*, 13 F.3d 478 (1st Cir. 1994)). Law 21, however, does not operate to convert non-exclusive sales representation agreement into exclusive contracts. *Id.* (citing *Borschow Hospital and Medical Supplies, Inc., v. Cesar Castillo*, 96 F.3d 10 (1st Cir. 1996); *General Office Products v. Gussco Manufacturing, Inc.*, 666 F. Supp. 328, 331, and *Vulcan Tools of Puerto Rico v. Makita U.S.A.*, Inc., 23 F.3d 564, 569 (1st Cir. 1994)). In this context, "the

'established relationship' between dealer and principal is bounded by the [sales representative] agreement, and therefore the Act only protects against detriments to contractually acquired rights." *Id.* (citing *Borschow*, 96 F.3d at 14 and *Vulcan Tools of Puerto Rico v. Makita*, 23 F.3d 564, 569 (1st Cir. 1994)).

If the term "non-exclusive" results clearly and unambiguously from the face of the contract, there is no need to consider extrinsic evidence of promise to limit number of representatives even absent a contractual integration clause. *Id.* (citing *Vulcan Tools*, 23 F.3d at 564-68). The Agreement in the case at bar clearly and unambiguously provides that CPP is a non-exclusive sales representative, it contains no term granting or even implying that CPP sales rights are exclusive for Puerto Rico. *Id.* at 221 ("[w]here contractual term providing for 'non-exclusive' distributorship was clear and unambiguous, there is no need to consider extrinsic evidence of promise to limit number of distributors...")(citing *Vulcan Tools*, 23 F.3d at 564-68). Furthermore, HMC, LLC always maintained its own customer base in Puerto Rico, thus depriving CPP from even claiming a *de facto* exclusivity for Puerto Rico.

Where, as here, the contract is unambiguous, its literal meaning must be applied. Article 1233 of the Civil Code, 31 P.R. Laws Ann. §3471 (""[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed"); *Executive Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 69 (1st Cir. 1995) ("to consider the extrinsic evidence at all, the court must first find the relevant terms of the agreement unclear"); *Marina Ind. Inc. v. Brown Boveri Corp.*, 14 P.R. Offic. Trans. 86, 114 P.R.Dec. 64, 72 (1983) ("[t]he strict mandate of the cited

art.1233 obliges us to abide by the literal meaning of the terms of the contract when, as in the present case, they leave no doubt as to the intention of the contracting parties"). Article 1233 of the Civil Code bars consideration of extrinsic evidence where an agreement leaves no doubt as to the intent of the contracting parties. *Borschow Hosp.*, 96 F.3d at 16 ("we mean what we say, and say what we mean: extrinsic evidence of the parties' intent is inadmissible in the face of a clear and unambiguous contract term under Puerto Rico Law");

The Puerto Rico Commerce Code, which supplements Law 21, also bars Plaintiffs contention that the Agreement was amended and/or modified by HMC, LLC's acts and omissions. Under the Commerce Code, verbal evidence results insufficient at law to modify the terms of a written contract without corroboration. *Id.* (citing *Vila & Hnos., Inc. v. Owens Ill. De P.R.*, 17 P.R. Official Trans. 987 997-1000(1986); *Garita Hotel Limited Partnership v. Ponce Federal*, 122 F.3d 88, 89 (1st Cir. 1997)). No corroboration exists in this case. Thus, HMC, LLC holds that Law 21 is inapposite to the relationship between CPP and HMC, LLC.

## II. POTENTIAL FACT AND EXPERT WITNESSES

**PLAINTIFF**

1. Emilio Colón, President of CPA, PMB Suite 502, 90, Ave. Rio Hondo, Bayamón PR 00961. Emilio Colon has knowledge of the: (i) nature of the relationship between Caribbean Parts Plus now CPA with Hastings Manufacturing Company and/or HMC, LLC; (ii) the terms and conditions of the contractual relationship; (iii) the damages suffered for termination of the contract without just cause.

2. Doris Colón, Vice-President of CPA. Doris Colón has knowledge of the same issues Emilio Colón has knowledge of.

3. Virginia Quiñones, Executive Assistant of CPA. Virginia Quiñones has knowledge of the terms and conditions of the contract between CPA and Hastings Manufacturing Company and/or HMC, LLC; particularly the exclusive nature of it. She also has knowledge of the bad faith of HMC, LLC when contracting with CPA.

4. Rafael Castrodad, President of CYM Auto Parts Distributors, Caguas, Puerto Rico. Rafael Castrodad has knowledge of Mr. Colón's good commercial reputation and relationship of CPA with Hastings Manufacturing Company and/or HMC, LLC.

5. José Amid Rodríguez, José Amid Rodríguez used to work as Sales Marketing Director for Mr. Colón and has knowledge of the exclusivity of the contract between CPA and Hastings Manufacturing Company now HMC, LLC. José Amid Rodriguez participated in a meeting celebrated in Hastings, Michigan; particularly held to discuss, among others, the exclusivity of the contract.

### *EXPERT WITNESS FOR CPA'S CLAIM:*

Plaintiff has not yet retained the services of any expert witness.

### HASTINGS MANUFACTURING COMPANY, LLC

1. Jeff Guenther, Director of Marketing and Sales HMC, LLC.

2. Frederick A. Cook, Jr., CEO & President of HMC LLC.

3. Rick Zwiernikowski, CFO & Treasurer of HMC LLC.

The above-mentioned list of witnesses is subject to revision as discovery progresses.

At this early stage of the litigation, HMC, LLC reserves the right to identify and call any additional witnesses, including expert(s), as needed or entitled to under the Federal Rules of Civil Procedures or the Federal Rules of Evidence.

### III.   DOCUMENTARY EVIDENCE

**PLAINTIFF**

1. E-mail dated on 5/2/2002 from Jeff Guenther to Emilio Colón. Re: (Increase of Commission Rate.)

2. Fax dated and delivered on 11/23/2004 from CPA to AGM Tools, Inc. Re: (Quotation for Hastings products.)

3. E-mail dated on 9/12/2005 from Mary Rivett to Emilio Colón. Re: (Recognition to CPA for good sales.)

4. E-mail dated on 9/14/2005 from Jeff Guenther to Emilio Colón. Re: (Bankruptcy proceedings and future plans.)

5. E-mail dated on 12/7/2005 from Jeff Guenther to Emilio Colón. Re: (Bankruptcy proceedings for Hastings Manufacturing Company and future plans.)

6. E-mail dated on 1/10/2006 from Jeff Guenther to Emilio Colón. Re: (Several and commissions.)

7. E-mails dated on 2/16/2006 between Virginia Quiñones and Jeff Guenther. Re: (Exclusivity of contract.)

8. E-mail dated on 3/6/2006 from Jeff Guenther to Emilio Colón. Re: (Exclusivity of Contract between CPA and HMC, LLC.)

9. E-mails dated on 3/23/2006 between Jeff Guenther and Virginia Quiñones. Re: (Terms and conditions of contract.)

10. E-mail dated on 5/11/2006 from Virginia Quinones to Jeff Guenther. Re: (Terms and conditions of contract.)

11. E-mails dated on 6/8/2006 and 6/15/2006 from Virginia Quinones to Mary Rivett. Re: (Terms and conditions of contract.)

Joint Case Management Memorandum

C:\Documents and Settings\MHuertas.000\Local Settings\Temporary Internet Files\OLK1\Joint Case Management Memorandum (4).doc

12. E-mail dated on 6/21/2006 from Erin Redman to Virginia Quinones Re: (Bad Faith by HMC, LLC.)

13. E-mail dated on 8/3/2006 from Jeff Guenther to Emilio Colón. Re: (Commissions.)

14. E-mails dated on 10/16/2006 between Mary Rivett and Virginia Quiñones. Re: (Several.)

15. E-mails dated on 10/17/2006 between Mary Rivett and Emilio Colón. Re: (Recognition to CPA as a Sales Representative; Other Matters: Poor services provided by HMC, LLC.)

16. Letter dated on 11/14/2006. Re: (Termination of Contract.).

17. Summary of Commissions for the 2002-year prepared by CPA.

18. Summary of Commissions for the 2003-year prepared by CPA.

19. Summary of Commissions for the 2004-year prepared by CPA.

20. Summary of Commissions for the 2005-year prepared by CPA.

21. Summary of Commissions for the 2006-year prepared by CPA.

**HASTINGS MANUFACTURING COMPANY, LLC**

| DATE | DESCRIPTION |
|---|---|
| 5/23/01 | Letter agreement by and between Hastings Manufacturing Company, Inc. and Mr. Emilio Colón d/b/a Caribbean Part Plus. |
| 10/4/05 | E-mail from Mary Rivett to Emilio Colón. Re: Several. |
| 10/5/05 | E-mail from Mary Rivett to Caribbean Parts Agency. Re: Several. |
| 10/17/05 | E-mail from Mary Rivett to Caribbean Parts Agency. Re: Several – CYM Back Orders. |
| 11/16/05 | Order entered by the U.S. Bankruptcy Court for the Western District of Michigan, Case No. 05-13047- jcs: (A) Scheduling Hearing on Approval of Sale of Assets Free and Clear of All Liens, Claims, and Encumbrances, and Assumption and Assignment of Executory Contracts and Unexpired Leases and Assumption of Certain Liabilities and (B) Approving (i)Form and Manner of Notice of Sale , (ii) Bidding Procedures, (iii) Break-Up Fee and (C) Granting Related Relief |
| 11/22/05 | E-mail from Mary Rivett to Caribbean Parts Agency. Re: Order Confirm. |
| 11/22/05 | Notice of Assumption and Assignment of Certain Executory Contracts and |

| DATE | DESCRIPTION |
|---|---|
| | Unexpired Leases filed by Hastings Manufacturing Company before the U.S. Bankruptcy Court for the Western District of Michigan, Case No. 05-13047-jcs. |
| 12/8/05 | Order entered by the U.S. Bankruptcy Court for the Western District of Michigan, Case No. 05-13047-jcs: (I) Authorizing the Sale of Substantially All of the Debtor's Operating Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims and Encumbrances to Hastings Acquisition , LLC; (II) Authorizing and Approving the Terms of the Debtor's Asset Purchase Agreement and Related Agreements with Hastings Acquisition LLC and Authorizing Consummation of the Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases and the Assumption of Certain Specified Liabilities ; and (III) Granting Related Relief |
| 1/1/06 | Draft of "Sales representation agreement" (Effective Date January 1, 2006) (Not Signed) |
| 1/10/06 | Letter from Hastings Manufacturing Company to Caribbean Parts Plus. |
| 1/23/06 | E-mail from Mary Rivett to Caribbean Parts Agency. Re: 2006 Forecast. |
| 3/6/06 | E-mail sent by Jeff Guenther to Emilio Colón. Re: Hastings ring sales YTD. |
| 3/20/06 | E-mail from Mary Rivett to Caribbean Parts Agency. Re: Hastings ring sales YTD. |

The above-mentioned list is subject to revision as discovery progresses. At this early stage of the litigation HMC, LLC reserves its right to identify and introduce into evidence in this action any additional documents it locates, discovers or obtains in discovery.

## IV. DISCOVERY

### DISCOVERY TO BE CONDUCTED BY CPA:

1.   CPA has submitted to HMC, LLC a First set of Interrogatories and Request for production of Documents.

2.   The appearing parties have reserved the following dates for the taking of depositions:

-July 28, 29 and 31, 2008.

-August 7, 8, 11, 12 and 13, 2008.

3. CPA reserves the right to submit if needed, additional interrogatories, request for production of documents and/or request of admissions within the time frame established in the Case Management Order.

A discovery timetable is contained in the *Report on Parties' Planning on Parties' Planning Meeting Pursuant to Rule 26(f)* filed with the Court on June 16, 2009 (Docket No. 9).

### V. CONSENT TO PROCEED BEFORE A MAGISTRATE JUDGE

At this time, the parties have not consented to proceed before a Magistrate Judge.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, 26th day of June 2008.

| | |
|---|---|
| s/ Edwin Gabriel Berrios-Borras<br>USDC-PR No. 223612<br>*bbprlaw@gmail.com*<br><br>**Edwin Gabriel Berrios-Borras**<br>Felipe Sanabria Law Offices<br>*Counsel for Caribbean Parts Agency, Inc.*<br>Calle Mayagüez 134<br>San Juan, PR 00917<br>787-763-9393<br>Fax: 787-763-9595 | s/Eyck O. Lugo-Rivera<br>**Eyck O. Lugo-Rivera**<br>USDC No. 216708<br>*elugo@mocpr.com*<br><br>s/Cristina S. Belaval Burger<br>**Cristina S. Belaval-Burger**<br>USDC-PR No. 219809<br>*cbelaval@mocpr.com*<br><br>**MARTÍNEZ ODELL & CALABRIA**<br>*Counsel for HMC, LLC*<br>PO Box 190998<br>San Juan, PR 00919-0998<br>Tel 787-753-8914<br>Fax 787-753-8402 |